UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERICK LOPEZ FLORES,<br>a/k/a MAYIMBU,<br>                     Defendant. | Case No. 18-cr-10450-MLW-1<br><br>**REDACTED VERSION OF<br>FILING UNDER SEAL** |

**GOVERNMENT'S RESPONSE TO
LOPEZ'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States submits this response to address a few points raised in the sealed supplemental sentencing memorandum filed by defendant Erick Lopez Flores on January 21, 2022 ("Lopez Supp. Memo.").[1]

*First*, the government rejects the notion that its recommendation fails to recognize the "complexity" of Lopez or the "mitigating circumstances of his life and this case" or that it is pushing some "one-dimensional narrative." Lopez Supp. Memo. at p. 1. The government's sentencing recommendation was thoughtful, deliberate, measured, and considered the facts and circumstances of Lopez's life. The government balanced the mitigating and aggravating factors in this case—both at the charging stage and at the sentencing stage. The government did not pursue a capital case in this prosecution. The government did not pursue a charge that would have carried a mandatory minimum sentence of life in prison. *See* 18 U.S.C. 1959(a)(1) (stating that a person who commits murder in aid of racketeering "shall be punished … by death or life imprisonment…"). The

---

[1] This response is limited to arguments raised in the latest Lopez filing and limits discussion of other factors in support of the government's sentencing recommendation of 50 years in custody. *See* Dkt. No. 748 (government's original sentencing memorandum); Dkt. No. 782 (government's response to Lopez's original sentencing memorandum).

government is not even recommending a discretionary sentence of life in prison (which is what both state law and the federal sentencing guidelines call for in this case). All of that is a recognition that certain mitigating factors were considered in this case. The problem Lopez has is that many of his supposed "mitigating" factors are anything but mitigating, and they certainly do not call for the multi-decade downward variance he is seeking. *See* Dkt. No. 782 (government's response to Lopez's original sentencing memorandum).

*Second*, the government rejects the idea that it has failed to understand or acknowledge the circumstances that produced this crime. Law enforcement in this District has gone to significant lengths for over seven years at this stage, in this and related prosecutions, to understand the complexities and underlying issues surrounding MS-13 gang violence. These efforts—which have been recognized nationally—have allowed for a previously unseen look into the organizational structure, recruitment efforts, and day-to-day activities of this violent gang. The enforcement efforts in Massachusetts have been especially meaningful in understanding the gang given the historical difficulty in cultivating human sources or cooperating witnesses against a gang whose core operating principles state that the penalty for speaking with law enforcement is death. The publicly-disclosed successes of these efforts have included, for example, the following: recording an MS-13 leader calling in from El Salvador to provide guidance to various MS-13 clique leaders from across the East Coast about how to organize and supervise their cliques; capturing multiple MS-13 members in Massachusetts admitting to murder, attempted murder, and other acts of violence; capturing MS-13 meetings where members discuss MS-13 activity; capturing MS-13 promotional ceremonies where members were "jumped in" to the gang to reward them for a murder they committed in Massachusetts; and obtaining information from numerous cooperating defendants, associates of gang

members, girlfriends, high school students, and others about the history of MS-13 members in Massachusetts, how the gang recruits and operates in Massachusetts, etc.[2] Even as to Lopez himself, the government's investigation did not stop at the murder he committed, but extended to a deep dive into his personal history and background, including a look at his day-to-day life, his friends and romantic interests at the time, his financial situation, etc.  The investigation also revealed extensive information about Lopez's long history in the gang; his personal commitment to the gang; his recruitment and mentoring of younger members; his promotion of a culture of violence; etc.  The problem for Lopez is not that the government has failed to understand the circumstances that produced this crime.  The problem for Lopez is that the government's lengthy investigation has showed how MS-13 leaders like Lopez helped produce this crime.

*Third*, and relatedly, the government takes issue with the argument that "the government's approach advances neither the goals of just sentencing nor the goal of a future with less violence." Lopez Sent. Memo. at p. 3 (arguing that "If gang violence were simply about incapacitating 'bad guys,' as the government's reductionist approach suggests—not about trauma, poverty, and the contagion of violence—Chelsea and Lynn would be safe places for children to walk to school today.").  This entire argument is long on rhetoric and short on facts.  Making such an argument requires either being unaware of—or simply ignoring—the significant reduction in violent crime in recent years in local communities like Chelsea and Lynn.  The communities that had been hardest hit by gang

---

[2]     This evidence—not just about the Sykos clique in particular but more broadly about MS-13 in Massachusetts—was produced to Lopez and others as discovery in this case because the enterprise in question was the broader MS-13 enterprise.  For Lopez to suggest that the government has not undertaken an exhaustive investigation to answer the question of "How did we get here?" is to ignore tens of thousands of pages of discovery about MS-13's operations in Massachusetts.

violence in general (and MS-13 violence in particular) in the preceding years *are* much safer places for children today, at least in small part because MS-13 members like Lopez—who recruit minors to commit violence and/or victimize minors and other vulnerable members of the community—are increasingly off the streets.  *See, e.g.*, Associated Press, "Boston breathing easier after major raid on MS-13 gang" (October 2, 2018) (available at https://apnews.com/article/37da29cc77f64bbd9d52fbebcc603766) (discussing how the years after the largescale 2016 takedown of MS-13 members in Massachusetts resulted in a noticeable reduction in violence in places like East Boston, Chelsea, and Lynn).

To the extent that Lopez has raised the question of whether the government's approach advances the goals of reducing MS-13 violence or making our communities safer, one statistic perhaps stands out more than any other: The Court should be aware that the July 2018 murder committed by Lopez, Salvador, Vaquerano, Tercero, and Reyes—now committed over three and a half years ago—is the most recent MS-13 murder in the entire Commonwealth of Massachusetts.  Put differently, based on information currently known to federal, state, and local law enforcement partners, *2021 was the third straight year without a single MS-13 murder across Massachusetts.*  To suggest that the government's efforts have not advanced the goals of reducing MS-13 violence is to ignore the stunning decline in MS-13 violence since the coordinated efforts by federal, state, and local law enforcement partners to disrupt and dismantle the gang in Massachusetts.[3] Further, these arguments ignore that the concerted efforts to prosecute violent MS-13

---

[3]  The government is not suggesting that it has forever cured the problem of MS-13 violence in Massachusetts.  The evidence does show, however, that the years following the prior enforcement efforts led to one of the most dramatic reductions in MS-13 violence anywhere in the country.  The Court's sentence in this case should, among other things, send a clear signal that efforts to reconstitute the gang in Massachusetts—as Lopez and others tried to do in 2017-18 after the 2016 takedown—will not be tolerated.

members is only a small part of a broader effort to reduce gang violence in our communities. Ongoing prosecutions aside, the U.S. Attorney's Office is increasingly involved in community engagement, crime prevention strategies, partnering on gang interdiction efforts, alternatives to prosecution (e.g., RISE program and Restorative Justice programs), etc. These series of prosecutions are just one aspect of a much broader overall approach that involves collaborating with local law enforcement partners, community members, and other stakeholders.

*Fourth*, the argument about Lopez's work history is not a compelling mitigation argument. *See* Lopez Supp. Memo. at pp. 2, 4, 8; *see also* Boyle Decl. at 13 ("I don't know too many gang leaders who are working the night shift at Dunkin' Donuts. It just doesn't work that way…"). For one thing, Lopez having an impressive work history at Dunkin' Donuts for multiple years obviously did not stop him from being an MS-13 leader or participating in a horrific murder. Separately, the government has never suggested that MS-13 members (or even murderers) like Lopez are one-dimensional figures with no redeeming qualities, etc. One of the notable facets about these series of prosecutions has been the discovery that *nearly every single MS-13 leader and murderer has both gone to school and held a job in our communities*. This case alone proves that point:

- Lopez went to school in Lynn and worked at Dunkin Donuts in the years leading up to his arrest.
- Salvador went to school in Somerville and Everett and worked at a well-known restaurant in the North End in the years leading up to his arrest.
- Tercero went to school in East Boston and worked at well-known restaurants in the North End and the South Shore Plaza in the years leading up to his arrest.
- Vaquerano went to school in Chelsea and worked at well-known restaurants in

5

      Cambridge in the years leading up to his arrest.

- Duggins went to school in Lynn and West Roxbury and worked at places like Airport Parking and the TD Garden in the years leading up to his arrest.

Again, the problem for Lopez is not that the government is failing to put Lopez's crime in context.  The problem for Lopez is that given the significant context that the government has, the factors that Lopez points to as mitigating factors are not so mitigating when applied to MS-13 leaders and murderers like Lopez.

      *Fifth*, as for the discussion of Lopez's role in the Blanca Lainez murder, the government stands by the guideline calculation as set forth in the plea agreement between the parties and does not seek a separate grouping as to the Lainez murder.  To the extent the Court is nonetheless inclined to review information relating to what cooperating witnesses said about Lopez and the Blanca murder, the government points to the following citations simply to assist the Court in its review: ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████  As discussed in the government's prior filing at Dkt. No. 818, pointing the Court to relevant evidence about Lopez does not, in any way, violate the government's obligations under the plea agreement in this case or under *Santobello v. New York*, 404 U.S. 257 (1971) or *United States v. Canada*, 960 F.2d 263 (1st Cir. 1992).  *See* Dkt. No. 818 at p. 13 (reiterating that the government stands by the sentencing recommendation and guideline calculation agreed upon in the plea agreement; further discussing how the plea agreement,

sentencing guidelines, and federal law all nonetheless allow for other relevant information to be placed before the Court).

*Sixth*, as for the post-arrest obstruction at Wyatt, the government again stands by the plea agreement and is not seeking an additional grouping for this conduct either. No additional guideline enhancement is necessary since Lopez's guideline range is already life in prison. However, the government again has an obligation to provide relevant information to the Court and the U.S. Probation Office as part of the sentencing process, and the government has done so. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is properly noted in the PSR, and the Court can review the information and deal with it as it sees fit. The government responds to counter only one point made by Lopez on this Wyatt issue: the allegation that "the agent's contemporaneous notes from the proffer session conspicuously leave out Mr. Lopez." Lopez Supp. Memo. at 7. That is incorrect. The same page highlighted by Lopez in his memo—Sealed Ex. C (USAO-10450-0009978), or page 15 of the agent notes—plainly mentions Lopez as being part of the group discussing potential retaliation ▓▓▓▓▓▓▓. *See id*. at bottom of page:

"Boo + Haze would say that ▓▓▓▓ would have to pay

Boo + Haze would say in the Group that ▓▓▓▓ needed to pay"

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ "Boo" is another nickname for Lopez, short for "Mayimbu," which is Lopez's gang name. *See, e.g.*,





███ Thus, the agent's contemporaneous notes make clear that Lopez was part of the discussions about trying to retaliate against ████. As the notes indicate, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

## CONCLUSION

For the reasons stated in the government's sentencing papers and those to be advanced at the sentencing hearing of Lopez, the government respectfully requests that the Court sentence Lopez to 50 years (600 months) in custody.

Respectfully submitted,

JOSHUA S. LEVY
First Assistant United States Attorney

By: /s/ Kunal Pasricha
KUNAL PASRICHA
KAITLIN R. O'DONNELL
Assistant United States Attorneys
District of Massachusetts

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By: /s/ Kunal Pasricha
KUNAL PASRICHA
Assistant United States Attorney
District of Massachusetts
